NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WILLIE SHUMAN,                      :
                                    :   Civil Action No. 09-2490 (PGS)
                Plaintiff,          :
                                    :
        v.                          :   **OPINION**
                                    :
J. SABOL,                           :
                                    :
                Defendant.          :

**APPEARANCES:**

Plaintiff pro se                    Counsel for Defendant
Willie Shuman                       Sarah G. Crowley
East Jersey State Prison            Ofc. of Mercer County Counsel
Lock Bag R                          McDade Administration Bldg.
Rahway, New Jersey   07065          640 South Broad Street
                                    P.O. Box 8068
                                    Trenton, NJ   08650-0068

**SHERIDAN**, District Judge

    This matter was opened to the Court by Plaintiff Willie

Shuman submitting a Complaint, dated May 18, 2009, alleging that

Defendant Correctional Officer J. Sabol violated his

constitutional rights by allowing onto Plaintiff's tier at Mercer

County Correctional Center a "non-congregate" violent prisoner

who later assaulted Plaintiff.  Plaintiff alleges that Officer

Sabol knew that allowing this "non-congregate" prisoner onto the

tier would make an attack on Plaintiff reasonably foreseeable.

Plaintiff stated that this event took place on March 23, 2009.

This matter was dismissed at Plaintiff's request and later re-opened.  On September 24, 2010, this Court entered its Order directing that all discovery was to be completed by December 27, 2010, and that any dispositive motions were to be filed by January 14, 2011.  On February 3, 2011, Defendant moved for leave to file a motion for summary judgment out of time, and this Court granted the Motion, directing that Defendant file any such motion for summary judgment no later than March 9, 2011.

Now pending before this Court are Defendant's Motion [21] for Summary Judgment and Plaintiff's Motion [22] for leave to amend the Complaint, dated March 23, 2011.[1]

### I.  DISMISSAL FOR FAILURE TO STATE A CLAIM

This Court must dismiss, at any time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). See also Fed.R.Civ.P. 12(b)(6), permitting a party to move to dismiss a claim in a civil action for "failure to state a claim upon which relief can be granted."

---

[1] Plaintiff seeks leave to amend the Complaint to assert claims against Mercer County Corrections Center and Warden Charles Ellis.

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ...  It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice.  Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be
> independent action.

> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

<u>Twombly</u>, 550 U.S. at 556-57 (citations and footnotes omitted).

4

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the <u>Twombly</u> pleading standard applies outside the § 1 antitrust context in which it was decided.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read <u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

## II.   SUMMARY JUDGMENT

A.   <u>Federal Rule of Civil Procedure 56</u>

A district court shall grant summary judgment, as to any

claim or defense, "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

A party asserting that a fact cannot be, or is genuinely disputed, must support the assertion by citing to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1). Nevertheless, the court may consider other materials in the record. Fed.R.Civ.P. 56(c)(3).

Rule 56(e) of the Federal Rules of Civil Procedure further provides that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1)  give an opportunity to properly support or address the fact;
>
> (2)  consider the fact undisputed for purposes of the motion;
>
> (3)  grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
>
> (4)  issue any other appropriate order.

Fed.R.Civ.P. 56(e).

No genuinely triable issue of material fact exists when the moving party demonstrates - based on the submitted evidence, and

7

viewing the facts in the light most favorable to the non-moving
party – that no rational jury could find in the non-movant's
favor. Ambruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir.
1994). Thus, the threshold enquiry is whether "there are any
genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor
of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
250 (1986). In deciding whether triable issues of material fact
exist, a court must view the underlying facts and draw all
reasonable inferences in favor of the non-moving party. See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236
(3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231
(3d Cir. 1987).

The rule does not increase or decrease a party's ultimate
burden of proof on a claim. Rather, the moving party bears the
burden of showing no genuine issue of material fact, and the non-
movant opposes the motion by presenting affirmative evidence to
the contrary. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256-57 (1986). Under the Rule, once the moving party has
properly supported its showing of no triable issue of fact and of
an entitlement to judgment as a matter of law, "its opponent must
do more than simply show that there is some metaphysical doubt as
to the material facts." Matsushita, 475 U.S. at 586 (citations

8

omitted).  See also Anderson, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [former Rule 56(e), new Rule 56(c)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("To raise a genuine issue of material fact, ... the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the ' mere scintilla' threshold and ... offer[] a genuine issue of material fact.").

A movant need not affirmatively disprove the other party's case; he may move on the ground that the non-movant lacks evidence "sufficient to establish the existence of an element

essential to that party's case." <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322-23 (1986).  Nevertheless, again, it is not
sufficient to support a motion with only conclusory assertions
that the non-movant has no evidence to prove his case.  To the
contrary, as Justice White warned, in his concurring opinion in
<u>Celotex</u>, "It is the defendant's task to negate, if he can, the
claimed basis for the suit." <u>Celotex</u>, 477 U.S. at 328 (Justice
White, concurring).  <u>Celotex</u>'s progeny reflects that sentiment –
that the movant bears the burden of <u>demonstrating</u> the lack of
evidence in the record to support the non-movant's claims.  <u>See</u>,
<u>e.g.</u>, <u>Haywood v. Nye</u>, 999 F.Supp. 1451, 1463 (D. Utah 1998);
<u>Andrews v. Crump</u>, 984 F.Supp. 393, 402-03 (W.D.N.C. 1996).

 It is not necessary that the case be fully adjudicated on a
motion for summary judgment.

> If the court does not grant all the relief requested by
> the motion, it may enter an order stating any material
> fact - including an item of damages or other relief -
> that is not genuinely in dispute and treating the fact
> as established in the case.

Fed.R.Civ.P. 56(g).

 Finally, after giving notice and a reasonable time to
respond, the court may:

> (1) grant summary judgment for a nonmovant;

> (2) grant the motion on grounds not raised by a party;
> or

> (3) consider summary judgment on its own after
> identifying for the parties material facts that
> may not be genuinely in dispute.

Fed.R.Civ.P. 56(f).

B.   New Jersey Local Civil Rule 56.1

New Jersey Local Civil Rule 56.1(a), as amended in 2008, requires that on summary judgment motions, both the moving and non-moving parties furnish a statement identifying what each side deems to be the material facts, so that the Court can determine if a genuine dispute exists.   The commentary to the Rule notes that "the requirement of a separate document represents a change from the practice under the former version of the rule," and that "[t]he Rule 56.1 statement is viewed by the Court as a vital procedural step, since it constitutes and is relied upon as a critical admission of the parties."   The commentary specifies the content and format of the statement: e.g., the assertions must be set out in separately numbered paragraphs; each fact must be supported by a citation to an affidavit.

Consequences of a movant's noncompliance with the Rule can be severe–"[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." L.Civ.R. 56.1(a).   See also Kee v. Camden County, 2007 U.S. Dist. LEXIS 23637, at *14 (D.N.J. 2007) (Simandle, Jr.); Langan Eng'g & Envtl. Servs. v. Greenwich Ins. Co., 2008 U.S. Dist. LEXIS 99341 (D.N.J. 2008) (Greenaway, J.).   Where an opposition brief is not accompanied by a Rule 56.1 statement, the movant is not automatically entitled to summary judgment.   Instead, the judge

"may enter summary judgment in favor of the moving party only if
the moving party has established that summary judgment is
appropriate." Cornelio v. Coupon Serv. Corp., 2007 U.S. Dist.
LEXIS 213, 15 *5 (D.N.J. 2007) (Pisano, J.). Such a scenario is
predicated on the movant having filed a Rule 56.1 statement.

The Court is mindful of the fact that Plaintiff is a pro se
litigant, and district court judges often relax procedural rules,
including Local Civil Rule 56.1(a), for an unrepresented
litigant. See, e.g., Jordan v. Allgroup Wheaton, 218 F.Supp.2d
643, 646 (D.N.J. 2002) (Irenas, J.), aff'd, 95 Fed.Appx. 462 (3d
Cir. 2004) (pro se plaintiff's failure to submit a Rule 56.1
statement leads court instead to draw relevant facts "primarily
from Plaintiff's complaint, and the transcript of Plaintiff's
deposition testimony, Defendant's Statement of Undisputed
Material Facts and supporting exhibits").

A court may excuse the failure to submit a Rule 56.1
statement where there is no evidence of bad faith. See, e.g.,
Rumbas v. Borough of Lawnside, 2008 U.S. Dist. LEXIS 60712
(D.N.J. 2008) (Simandle, Jr.); Shirden v. Cordero, 509 F.Supp.2d
461, 463-64 n.1 (D.N.J. 2007) (Martini, Jr.) (stating "lack of
compliance with the Local Civil Rules has made it difficult and
time-consuming for the Court to determine whether a genuine issue
of material fact exists. Nonetheless, the Court, having found no
evidence of bad faith, will decide Defendants' motion on its

12

merits"). A judge may relax the Rule as well where the interests of justice so require, which most commonly arises when both parties fail to comply. For example, in <u>Kee v. Camden County</u>, 2007 U.S. Dist. LEXIS 23637, at *16 (D.N.J. 2007), Judge Simandle decided to adjudicate a summary judgment motion where "both parties were equally lax in their compliance[,]" and where doing so was "in the best interest of the parties and justice." Nonetheless, before reaching this conclusion, he admonished defendants for providing "little in the way of support for their motion of summary judgment" and relying on documentary evidence and plaintiff's deposition, as well as plaintiff for submitting disorganized exhibits. <u>Id.</u> at *15. Judges throughout this District since have agreed with Judge Simandle's position, even after the 2008 amendments became effective. <u>E.g.</u>, <u>Langan Eng'g & Envtl. Servs. v. Greenwich Ins. Co.</u>, 2008 U.S. Dist. LEXIS 99341 (D.N.J. 2008) (Greenaway, J.); <u>Apata v. Howard</u>, 2008 U.S. Dist. LEXIS 72321 (D.N.J. 2008) (Irenas, J.).

## III.   <u>BACKGROUND</u>

The material undisputed facts show that, as of March 23, 2009, Plaintiff was confined as a pre-trial detainee[2] at Mercer

---

[2] Neither of the parties addressed, in their submissions, whether Plaintiff was a pre-trial detainee or a sentenced prisoner. The distinction is important, as pre-trial state detainees are protected by the Due Process Clause of the Fourteenth Amendment, while convicted and sentenced prisoners are protected by the Eighth Amendment proscription against cruel and unusual punishments. <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150 (3d

County Correctional Center.  Plaintiff was housed in A-pod, in the protective custody unit.  On the day of the incident at issue here, Plaintiff had a "congregate" status and was a runner on the Unit.  In that capacity, he was cleaning the unit.  Plaintiff did not have a "keep separate" order with respect to any other inmates.

Inmate Vernon Dockery was placed in the same unit on March 23, 2009, approximately two hours prior to the incident.  As a new inmate on the unit, Inmate Dockery was classified as "non-congregate" status, but he did not have a "keep separate" order with respect to any particular inmates.[3]  Plaintiff states that he locked himself in while the new prisoner was being admitted to

_____

Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).

The New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on July 2, 2010, after the events complained of here, and thereafter transferred to the New Jersey state prison system, where he remains confined at East Jersey State Prison in Rahway, New Jersey.

[3] Prison Standard Operating Procedures applicable to the protective custody unit, attached as an exhibit to the Motion, provide that (a) "congregate" inmates do not have a "keep separate" status with any other protective custody inmates, and (2) that "non-congregate" inmates are protective custody inmates who have a "keep separate" status with respect to one or more protective custody inmates, from whom they must be segregated at all times.  The SOP also provides, with respect to use of Day Space, that the Living Unit Officer may allow all congregate inmates out at one time, and that non-congregate inmates will receive one hour out of their cells separately from congregate and other non-congregate inmates.

the unit; shortly thereafter, he returned to his work cleaning the unit.

It is undisputed for purposes of this Motion that Officer Sabol released Inmate Dockery into the general population of A-pod P.C.  There is no evidence that Officer Sabol had any personal knowledge that Inmate Dockery had any history of violence with respect to other inmates or, more importantly, that he had any propensity toward violence against Plaintiff.

Within a couple of hours of his placement on A-pod P.C., Inmate Dockery attacked Plaintiff causing him serious injury, including a broken nose and head wounds requiring stitches.  When Inmate Dockery attacked Plaintiff, Officer Sabol called a "Code III" and proceeded to break up the fight with the assistance of other officers.

Plaintiff alleges that it was improper for Officer Sabol to release Inmate Dockery into the general population of A-pod P.C. and that he should have known that Inmate Dockery would attack Plaintiff.  Plaintiff asserts that Defendant Officer Sabol violated his rights under the Fourth,[4] Eighth,[5] and Fourteenth

---

[4] The Fourth Amendment to the U.S. Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

15

Amendments.   Only the claim under the Fourteenth Amendment merits

discussion.

_____

Nothing in the events described in the Complaint suggests a
violation of Plaintiff's Fourth Amendment rights.

    [5] As noted previously, the Eighth Amendment sets
constitutional standards with respect to the treatment of
convicted and sentenced prisoners, only, prohibiting cruel and
unusual punishment.

    By way of illustration, the Eighth Amendment standard for a
"failure-to-protect" claim is well established.  Under the Eighth
Amendment, prison officials must take reasonable measures "to
protect prisoners from violence at the hands of other prisoners."
Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotations
omitted).  To successfully state a claim for violation of the
Eighth Amendment, an inmate must satisfy both the objective and
subjective components of an Eighth Amendment claim.  The inmate
must allege a deprivation which was "sufficiently serious," and
that in their actions or omissions, prison officials exhibited
"deliberate indifference" to the inmate's health or safety.  See
Farmer, 511 U.S. at 834.  In the context of a failure-to-protect
claim, the inmate must show that he is "incarcerated under
conditions posing a substantial risk of harm," Farmer, 511 U.S.
at 833, and that prison officials knew of and disregarded the
excessive risk to inmate safety, Id. at 837.  "A pervasive risk
of harm may not ordinarily be shown by pointing to a single
incident or isolated incidents, but it may be established by much
less than proof of a reign of violence and terror." Riley v.
Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison
official[s] had the requisite knowledge of a substantial risk is
a question of fact subject to demonstration in the usual ways,
including inference from circumstantial evidence, and a fact
finder may conclude that ... prison official[s] knew of a
substantial risk from the very fact that the risk was obvious."
Farmer, 511 U.S. at 842.  Deliberate indifference is more than a
mere lack of ordinary due care, however; it is a state of mind
equivalent to a reckless disregard of a known risk of harm.
Farmer, 511 U.S. at 834.

    Plaintiff was not a convicted and sentenced prisoner at the
time of the attack by Inmate Dockery; thus, the Complaint fails
to state a claim under the Eighth Amendment.

IV.   <u>DISCUSSION</u>

A.   <u>Defendant's Motion for Summary Judgment</u>

Defendant Sabol contends that he is entitled to summary judgment either because he did not violate Plaintiff's constitutional rights or because he is entitled to qualified immunity.

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150  (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  <u>Hubbard</u>, 399 F.3d at 157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

17

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Thus, as noted by the Court of Appeals for the Third Circuit, sentenced prisoners are protected under the Eighth

18

Amendment from punishment that is "cruel and unusual," while pretrial detainees are protected, under the Due Process Clause, from <u>any</u> punishment.  <u>See</u> <u>Paulino v. Burlington County Jail</u>, 2011 WL 2909056, *2 (3d Cir. July 21, 2011).

Here, the undisputed material facts are that both Plaintiff and Inmate Dockery were confined in the protective custody unit, that Plaintiff did not have a "keep separate" order from any other prisoner, that Inmate Dockery was classified as "non-congregate" only because he was new on the tier, and that Inmate Dockery did not have a "keep separate" order with respect to Plaintiff or any other individual prisoner.  There are no facts suggesting that Officer Sabol had any reason to anticipate that Inmate Dockery would, unprovoked, attack Plaintiff.  Plaintiff has failed to present <u>any</u> evidence to this Court that Officer Sabol acted with disregard for Plaintiff's safety, or that Officer Sabol otherwise acted in a manner that might suggest unconstitutional punishment of Plaintiff.

Plaintiff places great reliance on the SOP and argues that it was improper for Officer Sabol to allow a "non-congregate" status inmate out of his cell with "congregate" inmates.  The Court notes that the SOP is somewhat ambiguous with respect to this issue.  The SOP, however, does not set the constitutional standard with respect to the mingling of inmates.  <u>Bell v. Wolfish</u> sets forth the applicable standard.

In a non-precedential opinion, the Court of Appeals has held that, in a case involving a prisoner assault on a pre-trial detainee, the detainee must show, under Bell v. Wolfish, deliberate indifference by the defendant.  See supra note 5.[6] This Plaintiff has not done.  The undisputed evidence before this Court is that Plaintiff did not even know Inmate Dockery, much less have any reason to anticipate that Inmate Dockery would assault him.  Nor is there any evidence that Officer Sabol had any personal knowledge regarding Inmate Dockery.  And while Inmate Dockery did have a "non-congregate" status, that alone does not establish that Officer Sabol was deliberately indifferent in permitting both inmates to be on the tier together, especially because Inmate Dockery's "non-congregate" status was a routine designation for new entrants into the protective custody unit and because Inmate Dockery did not have a "keep separate" status with respect to any other inmate on the protective custody tier.

Accordingly, Defendant is entitled to summary judgment.

B.   Plaintiff's Motion to Amend Complaint

Plaintiff seeks leave to amend the Complaint to assert against two new defendants, Mercer County Correctional Center and

---

[6] Once again, deliberate indifference is more than a mere lack of ordinary due care; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

Warden Charles Ellis, the same claims he has previously asserted against Officer Sabol.

Rule 15 of the Federal Rules of Civil Procedure governs amendment of complaints.  Pursuant to Rule 15(a)(1), a party may amend its pleading once, as a matter of course, within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.[7]  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  "The court should freely give leave when justice so requires."  Fed.R.Civ.P. Rule 15(a)(2).

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  A district court may properly deny leave to amend where the proposed amended complaint would be subject to dismissal.  See, e.g., Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010).

---

[7] Plaintiff's Motion for leave to amend was not filed within any of these time limits.

In determining the futility of a proposed amendment, the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6), accepting as true all factual allegations contained in the proposed amended complaint. <u>See</u>, <u>e.g.</u>, <u>Walls v. County of Camden</u>, 2008 WL 4934052 at *2 (D.N.J. Nov. 13, 2008) (citing, <u>inter alia</u>, <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)).

Here, this action was originally closed at Plaintiff's request then re-opened.  The Motion for leave to amend was filed 22 months after the Complaint was originally submitted, fourteen months after the motion to re-open was filed (without any proposed amended complaint), and four months after the close of discovery.  Indeed, the Motion for leave to amend, to add additional defendants, was filed only after the sole named Defendant filed a credible Motion for summary judgment.  In support of this very late Motion, Plaintiff asserts that he received ineffective help from a jailhouse paralegal and he was ignorant of the law and unable to determine who should be named as a defendant because he is under the care of a psychologist for an unnamed mental illness, taking unidentified psychotropic drugs.

This Court finds these allegations insufficient to justify Plaintiff's delay in filing the Motion to amend.  Plaintiff was aware from the initiation of this action of the identities of the

proposed new defendants, the Mercer County Correctional Center
and the warden.   There are no newly-discovered facts to justify
the delay in naming them as defendants.

Moreover, the proposed amendment would be futile, as the
proposed amended complaint fails to state a claim against either
of the proposed new defendants.

For example, a jail is not a "person" amenable to suit under
42 U.S.C. § 1983.   See Marsden v. Federal BOP, 856 F. Supp. 832,
836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit
under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp.
757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under
§ 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp.
890, 893-94 (E. D. Va. 1992) (local jail not a "person" under
§ 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995
(N.D. Cal. 1996) (county department of corrections is an agency
of the county and cannot be sued separately from the county under
§ 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)
(county department of corrections not a suable entity separate
from the county).   Thus, it would be futile to permit an
amendment naming Mercer County Correctional Center as a
defendant.

In addition, the proposed amended complaint alleges no facts
suggesting that the Warden Charles Ellis had any personal
knowledge about the inmate who attacked Plaintiff, his placement

23

on Plaintiff's tier, or his likelihood to attack Plaintiff - all
necessary to show "deliberate indifference."  Instead,
Plaintiff's proposed claim against Warden Ellis is based solely
on an untenable theory of vicarious liability.

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of
Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.
New York City Department of Social Services</u>, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); <u>Natale v.
Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of <u>respondeat superior</u>.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence." <u>Rode v.
Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286,
1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-
91 (3d Cir. 1995).  Thus, the proposed amended complaint fails to
state a claim against Warden Ellis.

For all the foregoing reasons, the Motion for leave to file an amended complaint will be denied.

V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion [21] for Summary Judgment will be granted and Plaintiff's Motion [22] for leave to amend the Complaint will be denied.   An appropriate order follows.

 

 

_____

Peter G. Sheridan
United States District Judge

Dated:   9/13/11